UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ADRIAN HUNTER | * | CIVIL ACTION |
| VERSUS | * | NO. 25-1043 |
| ALLY BANK CORP. | * | SECTION "P" (2) |

**REPORT AND RECOMMENDATION**

Pending before me is Defendant Ally Bank Corp.'s Motion to Dismiss pursuant to Rule 12(b)(6), which was noticed for submission on July 16, 2025. ECF Nos. 7, 7-3. Plaintiff Adrian Hunter failed to file an Opposition Memorandum, and the deadline for same expired on Tuesday, July 8, 2025. No party requested oral argument in accordance with Local Rule 78.1, and the court agrees that oral argument is unnecessary. This matter was referred to the undersigned magistrate judge for a Report and Recommendation. ECF No. 14 (citing 28 U.S.C. § 636(b)(1)(B)).

Having considered the record, submissions, and applicable law, the undersigned RECOMMENDS that Defendant's Motion to Dismiss be GRANTED for the reasons stated herein.

## I.    BACKGROUND

Plaintiff filed suit in state court alleging that Defendant Ally Bank violated federal and state consumer protection laws, committed unlawful debt collection practices, and breached its contract after Plaintiff allegedly tendered a promissory note dated March 10, 2025, as full and final payment of a debt under UCC 3-104 and UCC 3-603. ECF No. 2-1. Plaintiff alleges that her promissory note is a valid payment instrument, and Defendant's failure to accept it violates the UCC 3-603, § 1692(g) of the Fair Debt Collections Practices Act, § 1601 of the Truth In Lending Act, § 168s-2 of the Fair Credit Reporting Act. *Id.* at 2-3. She also asserts claims of fraudulent debt collection and misrepresentation. *Id.*

1

Invoking federal question and supplemental jurisdiction as well as diversity jurisdiction, Defendant removed the action to this court. ECF No. 2 ¶¶ 8-28. Defendant now moves to dismiss all claims (three federal claims and two state) for failure to state a cause of action. ECF No. 7; No. 7-1 at 5. Defendant Ally asserts that, on April 3, 2021, Plaintiff purchased a 2021 Ram 350 vehicle from Autonation Chrysler Dodge Jeep Ram LIQ in Mobile Alabama, financed through a retail installment sales contract that was assigned to Ally. ECF No. 7-1 at 2. It alleges that Plaintiff agreed to make 84 monthly payments of $1,131.42 and granted a security interest in the vehicle to secure the debt. *Id.* Ally asserts that Plaintiff's claims are rooted in the "sovereign citizen" movement whereby she contends that, by adding a handwritten note on her auto loan statement and returning same to Ally, she somehow satisfied her legal obligation to repay the debt. *Id.* at 1.

Defendant states that, two years after the purchase, Plaintiff began to have difficulty making the loan payments and requested extensions. *Id.* at 2. Despite the extensions, she defaulted on the loan. *Id.* After missing three payments in 2024, Ally sent a cure letter, warning Plaintiff of her default and potential for repossession. *Id.* Following cure letters, Plaintiff sent various documents described as a "promissory note" and "payment coupon," which she contends satisfies her payment obligation. *Id.* at 2-3. Ally rejected Plaintiff's promissory note and payment coupon. *Id.* at 3-4.

## II.    APPLICABLE LAW

Although the Court generally has the authority to grant a motion as unopposed, it is not required to do so.[1] Moreover, when the unopposed motion is a motion to dismiss with prejudice,

---

[1] *Edward H. Bohlin Co., Inc. v. Banning Co., Inc.*, 6 F.3d 350, 356 (5th Cir. 1993).

the court should not grant the motion solely because it is unopposed, without considering the merits of the arguments or less severe options.[2]

### A. Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) provides that an action may be dismissed "for failure to state a claim upon which relief can be granted."  "A motion to dismiss for failure to state a claim is not meant to resolve disputed facts or test the merits of a lawsuit."[3]  Rather, it tests whether, in plaintiff's best-case scenario, the complaint states a plausible case for relief.[4]  When a plaintiff is proceeding *pro se*, the pleading must be liberally construed and held "to less stringent standards than formal pleadings drafted by lawyers."[5]

Rule 12(d) requires the court to treat a Rule 12(b)(6) motion as a Rule 56 motion when matters outside of the pleadings are presented and not excluded by a court.  The Court may, however, consider documents attached to the complaint, referenced documents that are central to the claim, and documents that are part of the public record or subject to judicial notice in the Rule 12 analysis without converting the motion to a Rule 56 motion.[6]  In addition, the court may consider any documents attached to either the motion to dismiss or an opposition to that motion when the documents are referenced in the pleadings and are central to a plaintiff's claims.[7]

---

[2] *See Webb v. Morella*, 457 F. App'x 448, 452 n.4, 454 (5th Cir. 2012) (citation omitted) (vacating dismissal with prejudice for failure to file opposition in accordance with Local Rules in the absence of a clear record of contumacious conduct or extreme delay and where the court failed to consider less severe sanctions); *Ramsey v. Signal Delivery Serv., Inc.*, 631 F.2d 1210, 1214 (5th Cir. 1980) (vacating dismissal because the court should have considered sanction other than dismissal with prejudice for failure to observe a filing deadline).

[3] *Sewell v. Monroe City Sch. Bd.*, 974 F.3d 577, 581 (5th Cir. 2020).

[4] *Id.*

[5] *Calhoun v. Hargrove*, 312 F.3d 730, 733 (5th Cir. 2002) (internal quotation and citations omitted).

[6] *See, e.g.*, *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007) (citation omitted) (directing courts to "consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."); *Wolcott v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) (stating a court may consider the complaint, its proper attachments, documents incorporated by reference, and matters of judicial notice (citation omitted)).

[7] *Brand Coupon Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014) (citations omitted); *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *Walch v. Adjutant Gen.'s Dep't of*

The Supreme Court clarified the Rule 12(b)(6) standard of review in *Ashcroft v. Iqbal*, 556

U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).  To avoid dismissal, a

complaint must contain sufficient factual content to state a claim to relief that is plausible on its

face (i.e., the factual allegations must "be enough to raise a right to relief above the speculative

level").[8]  Thus, it is not enough to allege facts consistent with a claim because the allegations must

move past possibility and to plausibility of "entitle[ment] to relief."[9]  If the "facts" alleged are

"merely consistent" with those minimally required to establish liability, the complaint "stops short

of the line between possibility and plausibility."[10]

> Determining whether a complaint states a plausible claim for relief [is] . . . a
> context-specific task that requires the reviewing court to draw on its judicial
> experience and common sense. But where the well-pleaded facts do not permit
> the court to infer more than the mere possibility of misconduct, the complaint
> has alleged—but it has not "show[n]"— "that the pleader is entitled to relief."[11]

The complaint need not contain detailed factual allegations, but it must offer more than

labels, legal conclusions, or formulaic recitations of the elements of a cause of action as

"[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

statements, do not suffice."[12]  The complaint must include enough factual matter to raise a right to

---

*Tex*., 533 F.3d 289, 293–94 (5th Cir.2008) (considering exhibits attached to an opposition because "[n]o party
questions the authenticity of these two documents and both were sufficiently referenced in the complaint to permit
their consideration on a motion to dismiss"); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498–99 (5th Cir.
2000); *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig*., 238 F. Supp. 3d 799, 815 (S.D. Tex. 2017), *aff'd
sub nom. Lampkin v. UBS Fin. Servs., Inc*., 925 F.3d 727 (5th Cir. 2019).

[8] *Twombly*, 550 U.S. at 555, 570 (citation omitted).

[9] *Id.* at 557–58; *Iqbal,* 556 U.S. at 678.

[10] *Iqbal,* 556 U.S. at 678 (citation omitted).

[11] *Id.* at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citation
omitted) (stating that where the facts do not allow the court to infer more than a mere possibility of misconduct, the
complaint does not show that the pleader is entitled to relief).

[12] *Iqbal*, 556 U.S. at 678 (citations omitted).

relief above the speculative level[13] and provide a reasonable expectation that discovery will reveal evidence as to each element of the asserted claims.[14]

Although all well-pleaded facts are accepted as true and the complaint is considered in the light most favorable to the plaintiff, the Court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions."[15]  "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'"[16]

## B. **Availability of Amendment**

"The court should freely give leave [to amend a pleading] when justice so requires."[17] Generally, before dismissing a *pro se* complaint under Rule 12(b)(6), unless amendment would be futile, the court should give the plaintiff notice of the complaint's deficiencies and an opportunity to amend.[18]  As the Supreme Court stated:

> Under Rule 12(b)(6), a plaintiff with an arguable claim is ordinarily accorded notice of a pending motion to dismiss for failure to state a claim and an opportunity to amend the complaint before the motion is ruled upon.  These procedures alert him to the legal theory underlying the defendant's challenge, and enable him meaningfully to respond by opposing the motion to dismiss on legal grounds or by clarifying his factual allegations so as to conform with the requirements of a valid legal cause of action.[19]

Unless it is clear that a plaintiff is unwilling or unable to amend in a manner that will avoid dismissal, the court errs in not providing a *pro se* plaintiff with at least one opportunity to cure

---

[13] *Twombly*, 550 U.S. at 555.

[14] *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir. 2009) (quoting *Twombly*, 550 U.S. at 559-60).

[15] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (same); *see also Twombly*, 550 U.S. at 555 (" [The] obligation to provide the grounds of [] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (citations omitted and alterations in original)).

[16] *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (per curiam) (citation omitted).

[17] FED. R. CIV. P. 15(a)(2); *see F.D.I.C. v. Conner*, 20 F.3d 1376, 1385 (5th Cir. 1994) (noting that Rule 15(a) "evinces a strong bias in favor of granting . . . leave to amend a pleading").

[18] *Meeks v. DeBouse*, No. 24-10431, 2024 WL 4457846, at *1 (5th Cir. Oct. 10, 2024) (per curiam) (citing *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994)); *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000) (citation omitted).

[19] *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989) (emphasis added), *superseded by statute on other grounds as stated in Irizarry v. Sec'y, Fla. Dep't. of Corr.,* No. 21-10591, 2021 WL 3231163, at *1 n.1 (11th Cir. July 22, 2021).

pleading deficiencies before dismissing.[20]  When, however, the "complaint alleges the plaintiff's

best case," a further factual statement from the plaintiff need not be allowed.[21]

III.     **ANALYSIS OF ASSERTED CLAIMS**

   A. **Fair Debt Collection Act ("FDCPA")**

   The FDCPA was designed to eliminate abusive debt collection practices by debt

collectors.[22]  The Act accomplishes that purpose by regulating the kind and frequency of contact

a debt collector may have with a consumer, as those terms are defined under the FDCPA.[23]  To

state a claim, a plaintiff must allege facts sufficient to show that (1) plaintiff has been the object

of collection activity arising from a consumer debt; (2) the defendant is a debt collector defined by

the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA.[24]

   The FDCPA defines a debt collector as "any person . . . in any business the principal

purpose of which is the collection of any debts, or who regularly collects or attempts to collect,

directly or indirectly, debts owed or due or asserted to be owed or due another."[25]  Exempted from

the FDCPA's definition of "debt collector" is "any person collecting or attempting to collect any

debt owed or due or asserted to be owed or due another to the extent such activity . . . concerns a

---

[20] *Dierlam v. Trump*, 977 F.3d 471, 478 n.44 (5th Cir. 2020) (quoting *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002)); *see also Hale v. King*, 642 F.3d 492, 503 (5th Cir. 2011) (cleaned up); *Brown v. Brown*, 842 F. App'x 948, 949 (5th Cir. 2021) ("Generally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." (quoting *Mendoza-Tarango v. Flores*, 982 F.3d 395, 402 (5th Cir. 2020) (internal quotation marks and citation omitted))).
[21] *Jones v. Greninger*, 188 F.3d 322, 327 (5th Cir. 1999) (citation omitted).
[22] *Valderrama v. BBVA Compass*, No. 21-1776, 2021 WL 6065825, at *2 (N.D. Tex. Nov. 22, 2021) (Ramirez, M.J.) (citing *Watson v. Aurora Loan Servs. LLC*, No. 11-301, 2012 WL 3594233, at *7 (N.D. Tex. Aug. 21, 2012) (citing 15 U.S.C. § 1692(e)), *R.&R. adopted*, No. 21-1776, 2021 WL 6063618 (N.D. Tex. Dec. 21, 2021).
[23] *See* 15 USC § 1692a(3), a(6) (definitions); *see also Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009).
[24] *Valderrama*, 2021 WL 6065825, at *2 (quoting *Hunsinger v. SKO Brenner Am., Inc.*, No. 13-988, 2013 WL 3949023, at *2 (N.D. Tex. Aug. 1, 2013)).
[25] 15 U.S.C. § 1692a(6).  There are two categories of debt collectors, (1) those who collect debts as the "principal purpose" of their business and (2) those who collect debts "regularly."  *Id.*; *see LSR Consulting, LLC v. Wells Fargo Bank, N.A.*, 835 F.3d 530, 535 (5th Cir. 2016).

debt which was not in default at the time it was obtained by such person."[26]  Interpreting this

exception, courts recognize that "debt collector" does not include lenders, consumer's creditors,

mortgage servicing companies, or the assignee of a debt as long as the debt was not in default at

the time it was assigned.[27]  In this case, Plaintiff does not allege, however, that Defendant Ally is

a "debt collector" under the FDCPA.  Rather, she alleges that Ally is a financial institution and

creditor.  ECF No. 2-1 ¶ 4.

Plaintiff also alleges that Ally failed to validate the debt by providing proof of ownership,

the original note, or a complete transaction ledger.  ECF No. 2-1 ¶ 14 at 2.  Under § 1692g, a debt

collector who solicits payment from a consumer must, within five days of the initial

communication, provide the debtor with a detailed and written "validation notice" setting forth the

amount of the debt and the name of the creditor to whom the debt is owed.[28]  However, there can

be only one "initial communication," and any communication after the "initial communication'"

is necessarily not the "initial" communication.[29]  Letters after the initial communication are

irrelevant for purposes of the notice requirement in § 1692g(a).[30]  Further, § 1692g does not require

a debt collector to respond to a validation request.[31]  Rather, § 1692g(b) only requires that, if a

consumer notifies a debt collector that a debt is disputed within 30 days of receiving an initial

communication related to the debt, "the debt collector shall cease collection of the debt."[32]

---

[26] 15 U.S.C. § 1692a(6)(F).

[27] *Gipson v. JPMorgan Chase*, No. 13-2477, 2013 WL 3746003, at *2 (N.D. Tex. July 17, 2013) (quoting *Perry v. Stewart Title Co*., 756 F.2d 1197, 1208, *modified on reh'g on other grounds*, 761 F.2d 237 (5th Cir. 1985)).

[28] *Peter v. GC Servs. L.P*., 310 F.3d 344, 348 (5th Cir. 2002) (citing § 1692g(a)(1)-(2)).

[29] *Peterson v. Portfolio Recovery Assocs., LLC*, 430 F. App'x. 112, 114–15 (3d Cir. 2011) (quoting *Derisme v. Hunt Leibert Jacobson, PC*, No. 10-244, 2010 WL 4683916, at *5 (D. Conn. Nov.10, 2010)).

[30] *Ehrich v. RJM Acquisitions LLC*, No. 09-2696, 2009 WL 4545179, at *2 (E.D.N.Y. Dec. 4, 2009).

[31] *Bashore v. Resurgent Cap. Servs., L.P.*, 452 F. App'x 522, 524 (5th Cir. 2011) (citing 15 U.S.C. § 1692g(b)).

[32] "Communication" is defined as "the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2).

Plaintiff's factual allegations directly contradict the assertion that Defendant Ally is a "debt collector" under the FDCPA. Setting aside that failure, Plaintiff's claim also fails because she does not allege the date of the initial communication or the date she requested validation of the debt.[33] Plaintiff's claim under the FDCPA should be dismissed, without leave to amend.

## B. Truth in Lending Act ("TILA")

The general purpose of the TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."[34] The TILA has various provisions that include the right to rescind certain transactions within three business days and that require creditors to disclose certain finance charges, such as insurance premiums, to consumers.[35] It requires disclosure of certain material information at the time the credit contract is executed.[36] The TILA applies to

> each individual or business that offers or extends credit when four conditions are met: (i) the credit is offered or extended to consumers; (ii) the offering or extension of credit is done regularly; (iii) the credit is subject to a finance charge or is payable by a written agreement in more than four installments; and (iv) the credit is primarily for personal, family, or household purposes.[37]

Plaintiff asserts that Defendant violated the TILA because it failed to disclose the true nature of the loan's funding process. ECF No. 2-1 ¶ 16. The regulations, however, do not list funding process as a required disclosure.[38] Plaintiff's complaint fails to allege which particular

---

[33] *Davis v. Tulsa Adjustment Bureau,* No. 16-494, 2017 WL 11905441, at *3 (N.D. Tex. Jan. 27, 2017).

[34] 15 U.S.C. § 1601(a).

[35] *Lockett v. Helfman Motor Sales, Inc.*, No. 21-4082, 2022 WL 17730574, at *3 (S.D. Tex. Aug. 31, 2022) (citing 15 U.S.C. §§ 1605, 1635).

[36] *Ananiev v. Aurora Loan Servs., LLC*, No. 12-2275, 2012 WL 2838689, at *4 (N.D. Cal. July 10, 2012) (citing *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003); 15 U.S.C. § 1601(a)).

[37] *Hardaway v. Toyota Fin. Servs.*, No. 21-194, 2022 WL 317758, at *2 (E.D. Tex. Feb. 2, 2022) (quoting 12 C.F.R. § 226.1(c); and citing 15 U.S.C. § 1603; 12 C.F.R. § 226.3).

[38] 12 C.F.R. § 1026.18 (outlining required disclosures as identity of creditor, amount financed, itemization of amount financed, finance charge, annual percentage rate, variable rate, payment schedule, total payments, demand feature,

provisions of TILA she alleges was violated and fails to allege any facts regarding the particular items that were required to be disclosed to her that were not disclosed.   As such, she has failed to state a plausible claim for relief based on the alleged nondisclosure violations.[39]

In addition, any TILA claim appears time-barred.  Although TILA authorizes private suits and allows recovery of statutory damages to ensure proper disclosure and remedy nondisclosure violations,[40] a damages action must be brought "within one year from the date of the occurrence of the violation."[41]  The violation occurs at the time the loan is consummated and non-disclosure is not a "continuing violation for purposes of the statute of limitations."[42]  Similarly, any claim for recission under the TILA must be brought within "three years after the date of the consummation of the transaction . . . notwithstanding the fact that the information and forms required under [§ 1635(a)] or any other disclosures . . . have not been delivered to the obligor."[43]  And the Supreme Court has made clear that TILA "permits no federal right to rescind . . . after the 3-year period of § 1635(f) has run."[44]  Because Plaintiff's credit transaction was consummated on April 3, 2021, her May 1, 2025, filing asserting a TILA claim is time-barred.

total sale price, prepayment, late payment, security interest, insurance and debt cancellation, security interest charges, contract reference, assumption policy, required deposit, interest rate, and no guarantee to refinance provisions).
[39] *See Garcia v. Universal Mortg. Corp.*, No. 12-2460, 2013 WL 1858195, at *6 (N.D. Tex. May 3, 2013) (finding the plaintiffs failed to state a claim under TILA where the court was unable to determine from the plaintiff's allegations how the defendant violated TILA and where the plaintiffs provided no details regarding the particular items that were not disclosed to them or the provision of TILA that the defendant violated); *Val-com Acquisitions Tr. v. Bank of Am., N.A.*, No. 10-1965, 2011 WL 2312284, at *3 (N.D. Tex. June 9, 2011) (finding that plaintiffs have not shown that the alleged violation gave rise to a viable claim for relief where the plaintiffs failed to identify the provisions of TILA which were allegedly violated through nondisclosure or procedural failures).
[40] *See* 15 U.S.C. § 1640(a)(2)(A).
[41] *Id.* § 1640(e).
[42] *Moor v. Traveler's Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986); *see also Pratap v. Wells Fargo Bank, N.A.*, 63 F. Supp. 3d 1101, 1112 (N.D. Cal. 2014) (quoting *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986)).
[43] 15 U.S.C. § 1635(f).
[44] *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 419 (1998).

C. <u>**Fair Credit Reporting Act ("FCRA")**</u>

Citing 15 U.S.C. § 1681s-2, Plaintiff alleges that Defendant reported a disputed and potentially invalid debt to a credit bureau despite failing to validate it.  ECF No. 2-1 ¶ 20.

The FCRA was enacted "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."[45]  Although the FCRA primarily regulates consumer reporting agencies, § 1681s-2 imposes responsibilities on furnishers of information to consumer reporting agencies.  Although the FCRA does not define "furnisher" of information, courts define it broadly to include an "entity [that] transmits information concerning a particular debt owed by a consumer to a consumer reporting agency."[46]  Under the FCRA, furnishers of credit information must provide accurate information on consumers to credit reporting agencies[47] and fulfill certain duties upon being notified by a credit reporting agency of a dispute.[48]  Section 1681s-(a) is "enforced exclusively . . . by the Federal agencies and officials" and certain "State officials."[49]  Thus, courts consistently dismiss claims against furnishers of information by plaintiffs seeking to recover under the FCRA.[50]

---

[45] *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007).

[46] *Thomasson v. Bank One*, 137 F. Supp. 2d 721, 722 (E.D. La. 2001) (Fallon, J.) (citing *Carney v. Experian Info. Sols., Inc.*, 57 F. Supp. 2d 496, 501 (W.D. Tenn. 1999)).

[47] 15 U.S.C. § 1681s-2(a)(1)(A) (prohibiting any person from furnishing consumer information to a consumer reporting agency if the person knows or has reason to know that the information is inaccurate).  "The term 'reasonable cause to believe that the information is inaccurate' means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D).  The consumer must notify the furnisher, at the address specified for such notices, that specific information is inaccurate, and the information must in fact be inaccurate.  *Id.* § 1681s-2(a)(1)(B).

[48] 15 U.S.C. § 1681s-2(b).

[49] *Id.* § 1681s-2(d); *see also Washington v. CSC Credit Servs., Inc.*, 199 F.3d 263, 268 (5th Cir. 2000) (holding that Congress vested the power to obtain injunctive relief solely with the FTC).

[50] *See, e.g.*, *Hanberry v. Chrysler Cap.*, No. 20-246, 2020 WL 2219244, at *2 (E.D. La. May 7, 2020) (Ashe, J.) (dismissing plaintiff's § 1681s-2(a) claim for failure to state a claim); *Brumberger v. Sallie Mae Servicing Corp.*, No. 02-2909, 2003 WL 1733548, at *5 (E.D. La. Mar. 28, 2003) (same), *aff'd*, 84 F. App'x 458 (5th Cir. 2004); *see also Schweitzer v. Melane*, No. 21-154, 2022 WL 135423, at *4 (M.D. La. Jan. 13, 2022); *McLean v. Big Dog Grp., LLC*, No. 15-40, 2016 WL 3211514, at *11 (M.D. La. Mar. 11, 2016); *Bank One, N.A. v. Colley*, 294 F. Supp. 2d 864, 870 (M.D. La. 2003).

The Fifth Circuit has assumed, without deciding, that a plaintiff can assert a private right of action against a furnisher of information under § 1681s-2(b).[51]    To the extent Plaintiff seeks to rely on § 1681s-2(b), she must allege that (1) plaintiff "initiated a dispute with a credit reporting agency; (2) the credit reporting agency provided [the furnisher of the allegedly inaccurate information] with notice of the dispute; and (3) [the furnisher of the allegedly inaccurate information] failed to take appropriate action regarding the dispute."[52]    Absent an allegation that a consumer reporting agency notified Ally pursuant to 15 U.S.C. § 1681i(a)(2), she fails to state a claim under this provision.[53]    Plaintiff does not allege that she notified any credit reporting agency of her dispute or that any credit reporting agency subsequently notified Ally of same.

Even accepting as true the allegations that Ally furnished inaccurate information about her debt to a consumer reporting agency, Plaintiff has no private right of action suit under § 1681s-2(a), and she fails to allege the essential elements for a claim under § 1681s-2(b).  Accordingly, her FCRA claim should be dismissed.

**D.  <u>Fraudulent Debt Collection and Misrepresentation; Violation of UCC 3-603</u>**

Plaintiff alleges that Ally "misrepresented the debt by failing to acknowledge that [her] original promissory note created the credit for the loan" and "continued collections without proving ownership of the debt."  ECF No. 2-1 ¶¶ 18-19.  She also alleges that she tendered "a valid negotiable instrument under UCC 3-104" and Ally's refusal to process it resulted in forfeiture of collection rights under UCC 3-603 in breach of commercial contract law.  *Id.* ¶¶ 11-13.  These claims appear to be premised on "sovereign citizen" theories.

---

[51] *Young v. Equifax Credit Info. Servs., Inc.*, 294 F.3d 631, 639 (5th Cir. 2002).
[52] *Wagner v. BBVA Bank*, No. 22-680, 2024 WL 1741350, at *2 (W.D. Tex. Mar. 11, 2024).
[53] *Young*, 294 F.3d at 639; *Wagner*, 2024 WL 1741350, at *3 (noting that plaintiff cannot maintain a private right of action against a furnisher for alleged wrongful credit reporting until after the furnisher has been notified of the formal dispute received from the credit reporting agency (citing 15 U.S.C. § 1681s-2(b)).

As explained by the FBI:

> Sovereign citizens believe a "Federal Reserve Note" (US Currency) is a credit slip indicating the [United States Government] will provide something of value at a future date. Using this assumption, sovereign citizens file fraudulent financial documents to exchange credit for credit. As an example, rather than paying for a car with US Currency, the sovereign citizen will produce fraudulent financial documents (such as Promissory Note, Sight Draft, or Offset Bonds), which are offers to provide something of "actual" value at a future date.[54]

For instance, under the "vapor money" theory, a sovereign citizen advocates that a promissory note or similar instrument is the equivalent of money that the sovereign citizen may create with his or her signature.[55]

A plaintiff's effort to convert a demand for payment into a promissory note or money order that magically extinguishes a debt is a sovereign citizen tactic.[56]  In this case, although Plaintiff does not use the term "sovereign citizen," her claim appears to be premised on theories of the sovereign citizen movement.  Specifically, Plaintiff asserts that, when she tendered a "valid Promissory Note as full and final payment" under UCC 3-104 and UCC 3-603 and mailed same to Ally via certified mail, Ally was obliged to accept that piece of paper as payment of its debt and cease collection efforts or explain the reason it dishonored her tender.  ECF No. 2-1 ¶¶ 5-8.

---

[54] Federal Bureau of Investigation, "Sovereign Citizens: An Introduction for Law Enforcement" 6 (Nov. 2010), https://info.publicintelligence.net/FBI-SovereignCitizens.pdf (last visited October 3, 2025).

[55] *Francis v. Transp. Funding, LLC*, No. 24-62369, 2025 WL 676744, at *2 (S.D. Fla. Feb. 12, 2025) (citing *Farina v. Navy Fed. Credit Union*, No. 24-287, 2024 WL 3333270, at *2 (N.D. Fla. June 28, 2024), *R.&R. adopted*, No. 24-287, 2024 WL 3330586 (N.D. Fla. July 8, 2024)); *Bendeck v. U.S. Bank Nat'l Ass'n*, No. 17-00180, 2017 WL 2726692, at *4 (D. Haw. June 23, 2017) (rejecting plaintiff's "promissory note is money" premise as absurd and frivolous); *Demmler v. Bank One NA*, No. 05-322, 2006 WL 640499, *3 (S.D. Ohio Mar. 9, 2006) (dismissing as frivolous claim premised on assertion that, by giving bank a promissory note, plaintiff gave the bank his "money," which the bank simply loaned back to him); *Martinez v. Wells Fargo Bank*, No. 12-802, 2014 WL 12026058, at *5 (S.D. Cal. Sept. 11, 2014) (rejecting assertion that plaintiff satisfied his loan-repayment obligations by tendering a promissory note); *Johnson v. Wennes*, No. 08-1798, 2009 WL 1228500, at *4 (S.D. Cal. May 5, 2009) ("It strains the imagination for plaintiff to suggest that he should have clear title to his home without paying for it."); *Stephens v. Santander Consumer USA, Inc.*, No. 20-2010, 2020 WL 1874117, at *3 (W.D. Tenn. Apr. 15, 2020) (collecting cases rejecting claims based on such theories as "absurd and patently frivolous" and "baseless and fully devoid of merit").

[56] *See, e.g.*, *Larkins v. Montgomery Cnty. Cir. Ct.*, No. 19-281, 2020 WL 2744116, at *3, *5 (M.D. Ala. Apr. 21, 2020) (citing *Young v. PNC Bank, N.A.*, No. 16-298, 2018 WL 1251920, at n.1 (N.D. Fla. Mar. 12, 2018) (noting that plaintiff did not identify himself as a sovereign citizen but his attempt to extinguish a lawful and legitimate debt under a bizarre legal theory bore the hallmarks of a sovereign citizen theory)), *R.&R. adopted*, 2020 WL 2739821 (M.D. Ala. May 26, 2020).

Courts have recognized that, the fact that the asserted claims are premised on "vapor money" type theories alone is a sufficient basis to dismiss a complaint as frivolous because these theories have been "universally and emphatically rejected" by federal courts for decades.[57]  Indeed, the Fifth Circuit has affirmed the dismissal of complaints as frivolous when the claims were premised on sovereign citizen movement.[58]  Other circuits have likewise dismissed these claims as frivolous.[59]

Even were the court to set aside the fundamental flaw underlying Plaintiff's claims that she somehow satisfied her repayment obligation and extinguished her delivering a "promissory note," (i.e., the portion of her monthly bill that would be included with actual payment marked "Without recourse, pay to the order of Adrian Hunter, by Adrian Hunter, agent"),[60] Plaintiff's claims still fail as a matter of law.

## IV.    CONCLUSION

Plaintiff has failed to state a cognizable claim under the Fair Debt Collection Practices Act, the Truth in Lending Act or the Fair Credit Reporting Act.  In addition, Plaintiff's fraudulent debt collection/misrepresentation and UCC 3-603 claims appear to be premised on theories espoused by the sovereign citizen movement that have been universally rejected by federal courts and

---

[57] *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212 (D. Conn. 2010) (citations omitted); *see also Woodson v. Woodson*, No. 22-03, 2022 WL 16985602, at *2 (W.D. Tenn. Feb. 18, 2022) (citing *United States v. Bradley*, 26 F. App'x 392, 394 (6th Cir. 2001)), *R.&R. adopted*, 2022 WL 16963997 (W.D. Tenn. Nov. 16, 2022).

[58] *See Watson v. Texas State Univ.*, 829 F. App'x 686 (5th Cir. 2020).

[59] *See Price v. Lakeview Loan Servicing, LLC*, No. 21-11806, 2022 WL 896816, at *3 (11th Cir. Mar. 28, 2022) (affirming as frivolous dismissal of sovereign citizen's claims based on "vapor money" theory (citing *Allah-Bey v. Roberts*, 668 F. App'x 419, 420 (3d Cir. 2016) (affirming the district court's dismissal of the plaintiff's complaint where his theory was "identical to the 'vapor money' legal theory that numerous federal courts have rejected as frivolous"); *In re Ward*, 583 B.R. 558, 572 (Bankr. S.D. Ga. 2018) (declining to issue a declaratory judgment based on the "vapor money" theory and noting that "every federal court that has considered this theory has rejected it"); *Tonea v. Bank of Am., N.A.*, 6 F. Supp. 3d 1331, 1344 (N.D. Ga. 2014) ("Courts in this district have routinely rejected the 'vapor money' theory as frivolous."); *Gallant v. Deutsche Bank Nat'l Tr. Co.*, 766 F. Supp. 2d 714, 722 (W.D. Va. 2011) (noting that courts have "uniformly rejected" claims based on the "vapor money" theory); *McLaughlin*, 726 F. Supp. 2d at 209 (rejecting fraud and statutory claims based on the "vapor money" theory)).

[60] ECF No. 7-2.

dismissed as frivolous. For these reasons, as more fully set forth above, Plaintiff's complaint should be DISMISSED. And because Plaintiff's claims fail as a matter of law, amendment would be futile, and the claims are frivolous based on theories espoused by the sovereign citizen movement, Plaintiff need not be provided an opportunity to amend.

## V.   RECOMMENDATIONS

Accordingly,

**IT IS RECOMMENDED** that Defendant's Motion to Dismiss be GRANTED and that Plaintiff's claims be DISMISSED with prejudice and without leave to amend.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[61]

Dated this __9th__ day of October, 2025.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

[61] *Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).